Gilmore, J.
1. The ground upon which Schroder contested the election, as appears from his notice of contest, was, in substance: That the clerk and justices erred in not placing upon the abstract of the votes of the county, and certifying thereto, the 'votes cast for him for the office of probate judge in' Perrysburg township, and in neglecting and refusing to count and certify the vote so given, and in declaring Phelps elected.
We are all of the opinion that the action of the clerk and justices in rejecting the poll-book and vote of Perrysburg township was wholly unauthorized and illegal. The poll-book in form and substance complied with the requirements of the statute. The provisions of the statute defining the duties of these officers as canvassers are plain and unmistakeable : “ In making the abstracts of votes aforesaid, the justices and clerk shall not decide on the validity of the returns aforesaid, but shall be governed by the number of votes stated in the poll-bQoks.” S. & C. 536, sec. 34. The justices and clerk are not clothed with the power of determining questions of illegality or fraud in elections. Where, as in this instance, the poll-book on its face was in form and substance regular, their only duty was to abstract and certify the vote. But this wrongful act of the clerk. *555 and justices has ceased to be of importance in the case. The appeal to the Court of Common Pleas vacated the action of the clerk and justices as to the abstracts and returns, so far as they affected the parties to this contest. If these officers had counted, abstracted, and certified the vote-of Perrysburg township in connection with the other townships in the county, it would have shown that Schroder was elected. If Phelps had then appealed, the case would, on the appeal, have stood in the Court of Common Pleas, just as it did on Schroder’s appeal, except that it would have affected the parties differently in this, that there would have been a prima fade case shown by the record in favor of Schroder, which would have thrown the burden of proof upon Phelps.
The testimony introduced by Schroder on the trial in the Court of Common Pleas went to show the regularity of the election and the validity of the poll-book of Perrysburg township, and its due delivery to the clerk, as required by the statute; and upon this testimony the poll-book was properly received in evidence ; and this, in connection with the poll-books of the' other townships of the county, which were in evidence, and admitted, for the purposes of the trial, to be correct, made a prima fade case for Schroder, the appellant.
2. Counsel for the plaintiff in error claims that the District Court was not authorized to review the evidence in the absence of a showing upon the record; that a motion for a new trial, based upon the fact that the judgment was against the law or the evidence, was made and overruled.
There was no case before the District Court authorizing a review of the case upon the evidence, nor was it proper that it should have attempted to do so. This is a special proceeding, in which no pleadings are required. The notices of contest and journal entries of the court would constitute the entire record, in the absence of a bill of exceptions containing other matters and an order making it a part of the record.
The five hundred and twelfth section of the code provides *556 that “ an order affecting a substantial right made in a special proceeding ... is a final order, which may be vacated, modified, or reversed, as provided in this title.” Questions of law in proceedings of this kind can be brought before a reviewing court, on error, only by bringing the evidence upon which they arise upon the record by a bill of exceptions ; and where questions of law are thus presented, they may be reviewed on error in the appellate court, with or without a motion for a new trial having been made in the court below. Schuman v. McBride, 15 Ohio St. 573; Powers v. Reed, 19 Ib. 207; Fortman v. Goepper, 14 Ib. 562; Turner v. Turner, 17 Ib. 449.
The testimony introduced by Phelps before the Court of Common Pleas was uncontroverted, and tended to prove that gross frauds were perpetrated by the judges and clerks of the election and others, which had been carried into the poll-book, and constituted the substance of it, on account of which the Court of Common Pleas, after it had been admitted, rejected the poll-book of the election in Perrysburg township as evidence of the truth of what it contained, and gave judgment accordingly. The case in the District Court stood, with the testimony justifying the finding of facts by the Court of Common Pleas, admitted, but the conclusion of laxo drawn therefrom denied; and the District Court must therefore have reversed the judgment on the sole ground that, notwithstanding the evidence in the •case, the judgment was contrary to law.
3. "Was the finding and judgment of the Court of Common Pleas erroneously reversed ?
The District Court manifestly went upon the .idea that a poll-book complying with the requirements of the statute as to form and substance was prima facie evidence of the truth of all that it contained; that it could not be so impeached for extrinsic frauds, on the part of the election •officers and others, as to destroy its prima facie character in this respect; and that the only way of purging it, if it •contained fictitious or illegal votes, was by rejecting such votes singly, upon extrinsic proof that they were fictitious *557 or illegal, thus throwing, the burden of proof upon the party complaining of such votes. And it is now claimed by counsel for Schroder that this view is correct, and that the setting aside of the poll-book as prima facie evidence was a usurpation of power by the Court of Common Pleas.
The statutory provisions in reference to the mode of contesting elections are very meager, and in substance are as follows : Upon the abstract of the votes being made by the-clerk and justices, and the result declared, any candidate or other person to whom the right is given by the statute may give notice of appeal, and within the designated time-enter his notice with the clerk of the Court of Common Pleas, and thereupon give notice to the proper party when, where, and before whom testimony will be taken, the opposite party having the same privileges in reference to-taking testimony. The clause of the forty-second section of the act (S. & C. 540) conferring appellate jurisdiction upon the Court of Common Pleas is: “ That after the evidence is filed, the court shall hear and determine the contest.”
Under this authority there can be no doubt as to the-extent of judicial power conferred upon the Court of Common Pleas in cases of this kind. It is the power to try and determine the case made by the testimony upon its-merits.
The forty-sixth section of the election law (S. & C. 539) is not a limitation upon this .power. It provides “ that no election shall be set aside for want of form in the poll-books, provided they contain the substance.” This has reference only to matters of form and substance appearing on the face of the poll-books themselves. It is mandatory upon all officers and tribunals to this extent. But where the law has made provision for examining into the legality or illegality of the election, by the aid of extrinsic evidence, as upon appeal, the section constitutes no restriction upon the power of the court to receive, weigh, and apply othei evidence in the determination of the case.
"While, therefore, we have no doubt as to the power of *558 the Court of Common Pleas to declare that the poll-book of a township has been impeached for fraud, to such an extent as to require its absolute rejection as prima fade evidence of the truth of what it contains, still it is a power that should be exercised with extreme caution, and only in extraordinary cases, where the duty of the court, in order to protect the people in the full and fair expression of their will through the ballot-box, imperatively requires it.
Where the officers of the election have acted honestly in the discharge of their duties, but through incapacity, inadvertence, or errors of judgment, have permitted illegal votes to be given and counted, the poll-book should not be rejected as prima fade evidence. In such a case, it would be the duty of the court trying the contest, if the testimony warranted it, to purge the polls of such illegal votes, and give effect to the legal or unimpeached votes contained in the poll-book. But where, as in this case, through the frauds of the officers conducting the election, the poll-book, as certified and returned, shows that there were over 3,000 votes cast, counted, and returned in the township, when in fact there were not more than 1,200 legal voters residing therein ; from which it is to be conclusively inferred that at least 1,800 of the names appearing on the poll-book, and duly certified, were illegal or fictitious, a case was made which justified the Court of Common Pleas in rejecting the poll-book as prima fade evidence of the correctness of the uote indicated by it, which was done in this case.
As has been previously shown, the case was not before the District Court for review upon the evidence; questions of law arising on the evidence only beiug before it on error. It therefore erred in holding as a matter of law that the Court of Common Pleas erred in its finding and judgment; and also in receiving the poll-book in evidence, and rendering judgment in favor of Schroder thereon.
4. Where a poll-book isimpeached for fraud, and rejected .as prima fade evidence, it does not follow that the legal voters who had voted at the election will be disfranchised, or that the candidates will be deprived of the legal votes *559 they actually received at the election in the township. In this case, it is apparent at a glance that it would have been an endless as well as futile task to have attempted to prove how 1,800 illegal or fictitious votes returned in the poll-book were cast. The proof against each one of these names, if fictitious, would necessarily have been negative, if it had been attempted to purge the poll-book of them. "When the poll-book was rejected, the way was opened for either party, by testimony other than the poll-book, and iu addition to it, to have proved the number of legal votes ho received in the township. It was practicable for this to have been done by affirmative proof. Of course the burden of proof would have been on the party claiming the legal votes.
The judgment of the District Court is reversed, and the judgment of the Court of Common Pleas affirmed.
"Welch, C. J., White, Rex, and McIlvaine, JJ., concurred.